IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICHINO AMERICA, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>VALENT U.S.A., LLC,<br><br>    Defendant. | CASE 1:20-CV-00704-UNA |

**NICHINO AMERICA, INC.'S SUPPLEMENTAL BRIEF
ON THE ISSUE OF IRREPARABLE HARM IN SUPPORT OF ITS
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**I.    Nature and Stage of the Proceeding**

Nichino filed its Motion for a Preliminary Injunction on June 30, 2020. (D.I. 9-11). Valent filed its opposition on September 8, 2020. (D.I. 29-36). Nichino filed its Reply Brief and evidence furthering supporting its Motion for a Preliminary Injunction on September 22, 2020. (D.I. 51). Subsequently, on October 5, 2020, the parties appeared for oral argument before the Court. (D.I. 63).

Subsequent to the oral argument, on December 27, 2020, President Donald J. Trump signed the Trademark Modernization Act of 2020 ("TMA") into law. The TMA constitutes a significant change to the laws governing trademarks, generally, and that is especially true of the TMA's provisions concerning the presumption of irreparable harm in preliminary injunction matters. Pursuant to the Court's Order of March 5, 2021, Nichino submits this supplemental brief and the supporting Declaration of Ian Wildey ('Wildey Dec.") to explain why the TMA drastically changes the posture of this case and to explain why Valent cannot rebut the presumption of irreparable harm afforded under the TMA.[1]

---

[1] Because the TMA's provisions concerning irreparable harm required no rulemaking, the TMA provisions regarding irreparable harm are the current law.

1

**II. The TMA Provides That a Trademark Owner Seeking Injunctive Relief Is Entitled To a Presumption of Irreparable Harm Upon a Finding of a Likelihood of Success on the Merits.**

**a. Nichino Has a Very Strong Likelihood of Success on the Merits of it is Claims.**

As explained in its prior filings and as summarized in the bullet points set forth in the "Summary of Argument" in Nichino's reply brief, Nichino's showing that there is a likelihood of confusion between its long registered CENTAUR mark and Valent's recently adopted SENSTAR mark is compelling. The well-established *Lapp* factors weigh heavily in favor of finding a likelihood of confusion. "Where the owner of the trademark and the infringer 'deal in competing goods or services, the court need rarely look beyond the mark itself. In those cases, the court will generally examine the registered mark . . . and compare it against the challenged mark.'" *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983)).

Here, the competing marks are CENTAUR and SENSTAR. Valent admits that the respective marks are pronounced "Sen-Tar" and "Sen-Star." The trademarks share meaningful similarities. Courts have found a likelihood of confusion between less similar marks when used with competing products. *See Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834 (D. Del. 2006) (AVENTIS and ADVANCIS); *see also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) (ADVICOR and ALTOCOR).

**b. The Presumption of Irreparable Harm Afforded in the TMA Makes Nichino's Motion for a Preliminary Injunction More Persuasive.**

The TMA amends Section 34(a) of the Trademark Act of 1946 (15 U.S.C. § 1116(a)) as follows:

> A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or **upon a finding of a likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction** or temporary restraining order.

*See* TMA at 160 (emphasis added). The TMA also provides that the amendment "shall **not** be construed to mean that a plaintiff seeking an injunction **was not entitled to a presumption of irreparable harm before the date of enactment of this Act.**" *Id.* (emphasis added). The TMA therefore clarifies that the decision in *eBay, Inc. v. MercExchange LLC*, 547 U.S. 388 (2006), did not ever extend to trademark infringement actions.

The result of the above-discussed amendment is a return to pre-*eBay* precedent, *i.e.*, a presumption of irreparable harm follows when a moving party demonstrates a likelihood of success on the merits. As the Third Circuit explained in *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014):

> we have repeatedly held, prior to *eBay and Winter*, that a plaintiff alleging a Lanham Act trademark infringement claim is entitled to a presumption of harm when she demonstrates a likelihood of success on the merits. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (noting that "trademark infringement amounts to irreparable injury as a matter of law"); *see also Opticians*, 920 F.2d at 196. In *Opticians*, we concluded that trademark infringement constitutes a per se injury because it inhibits the owner's "ability to control its own … marks, which in turn creates the potential for damage to its reputation. Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case." 920 F.2d at 196; *see also S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) (noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill" and "trademark infringement amounts to irreparable injury as a matter of law").

Following enactment of the TMA, the precedent summarized above in *Ferring Pharm.* now controls.

    **c. Valent Cannot Rebut the Presumption of Irreparable Harm Afforded Under the TMA**

Where Nichino has used its registered CENTAUR mark for over 16 years, spent hundreds of thousands of dollars promoting its product and nurturing the goodwill associated with the mark, achieved tens of millions of dollars in revenue for its CENTAUR products over the last several years alone, and promptly objected to Valent's use of the SENSTAR mark, Valent cannot rebut the

presumption of irreparable harm under the TMA and relevant precedent. *See Kos Pharms* at 369 F.3d at 726.

The fact that Valent, a much larger company than Nichino, is on the verge of obtaining state registration of its product for sale in California and will thereafter unleash its SENSTAR product on that large agricultural market makes the potential "reverse confusion" and irreparable harm all the more imminent. As explained in Nichino's prior filings (and particularly in its reply brief) and the accompanying Declaration of Nichino's Director of Marketing:

- Valent's SENSTAR product is not yet registered for use in California, which constitutes <u>by far</u> the largest market for both parties' products, but Valent is likely obtain registration of its SENSTAR product in California very soon. (Reply Brief, p. 9) (Wildey Dec. ¶ 7).

- As Valent is a much larger company than Nichino, Valent will inundate the California market with promotions and marketing activity related to its similarly-named product. As discussed in Nichino's reply brief, p. 9, Valent predicts that a very significant percentage of its sales of SENSTAR will occur in California. Given the disparity in size between the companies, Nichino will not be able to meaningfully respond to this market saturation.

- "Reverse confusion" is likely to occur, as future customers will confuse Valent's SENSTAR product, which is overwhelming the market, with Nichino's CENTAUR product, even though Nichino is the "senior user." In reverse confusion cases, consumers mistakenly believe the junior user (Valent) is the source of the senior user's (Nichino's) products, harming the senior user's commercial identity, causing it to lose control over its goodwill and reputation, and impairing its ability to grow. (Wildey Dec. ¶¶ 8-9)

- Given the similarity of the respective marks and the identity of the products, it is inevitable that persons of various sophistication levels who work in the agricultural field, *e.g.*, migrant workers, drivers, employees at agrochemical distributors, farm owners, and crop consultants, will mistake SENSTAR for CENTAUR, or vice versa. (Reply Brief, pp. 14-15)

- Confusion resulting from the similarly named trademarks is likely to result in one product being selected for use when the user intended to select the other. This is particularly true in "word of mouth" situations. (Wildey Dec. ¶ 4)

- Nichino can obviously not control the manufacturing processes for Valent's SENSTAR product or, for example, the quality of the packaging. Misapplication of an insecticide can have enormously negative consequences, including harm to human and animal life, a negative effect on crop growth, as well as the destruction of the crops and soil itself. Any defects associated with Valent's SENSTAR product or damage that results from the mistaken application or misapplication of the products due to trademark confusion will reflect poorly on Nichino. (*Id.* ¶ 9).

4

- Nichino's ability to continue to build consumer recognition of its CENTAUR brand and to expand its use of that brand will be impaired by Valent's investment of even greater potential marketing dollars into building consumer recognition of SENSTAR. (*Id.* ¶ 9).

- Nichino's damages will consist of lost sales and potentially the loss of goodwill in the CENTAUR trademark, which will be devastating to Nichino's overall business. This is particularly true because Nichino has spent more than 16 years developing its CENTAUR brand and CENTAUR revenue accounts for nearly 15 percent of Nichino's total revenue. (*Id.* ¶ 2, 8-9).

Neither Nichino nor this Court will be able to undo that irreparable harm once it occurs. *See Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 805 (3d Cir. 1998) ("Injuries associated with these type of cases have a particularly strong likelihood of confusing consumers' perceptions of competing products and can have lasting effects on an injured plaintiff's market share"). Accordingly, Valent cannot rebut the presumption of irreparable harm afforded under the TMA, and the undisputed facts demonstrate that Nichino is likely to suffer imminent irreparable harm if an injunction is not entered.

## III.    CONCLUSION

The TMA's enactment drastically changes the posture of this case. Nichino has a very strong likelihood of success on the merits, and is now entitled to a presumption that it will be irreparably harmed. Valent cannot rebut the presumption of irreparable harm. For the reasons set forth herein and in its prior submissions, Nichino asks the Court to grant its motion for a preliminary injunction.

Respectfully submitted,

Dated: March 12, 2021

Damien Tancredi, Esq., (DE No. 5395)
Damien.Tancredi@flastergreenberg.com
FLASTER/GREENBERG P.C.
1007 North Orange Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 351-1910
Facsimile: (302) 351-1919
*Attorneys for Plaintiff*

5